UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

ADEL OSMAN,

Case No.:

                                        Plaintiff,          **<u>VERIFIED</u>**
                                                            **<u>COMPLAINT</u>**

          -against-

THE CITY OF NEW YORK; MAYOR OF THE CITY OF NEW          **PLAINTIFF DEMANDS**
YORK ERIC ADAMS; POLICE COMMISSIONER FOR THE CITY       **A TRIAL BY JURY**
OF NEW YORK KEECHANT SEWELL; NYPD CHIEF OF
DEPARTMENT JEFFREY MADDREY; NYPD CHIEF OF PATROL
JOHN CHELL; and NEW YORK CITY POLICE DEPARTMENT
MEMBERS JOHN or JANE DOE #1-20;

                                        Defendants.
-------------------------------------------------------------------------------X

Plaintiff, ADEL OSMAN, by his attorneys, KAISHIAN & MORTAZAVI LLC, by

MARYANNE K. KAISHIAN, ESQ., an attorney duly licensed to practice before the United States

District Court for the Eastern District of New York, hereby complains of Defendants as follows:

## <u>PRELIMINARY STATEMENT</u>

1.     At the time of the events giving rise to the instant Complaint, Plaintiff Adel Osman

was an 18-year-old student and resident of Kings County, City and State of New York. Defendant

NYPD Members unlawfully, and repeatedly, detained and/or arrested Mr. Osman in at least three

separate incidents beginning on or about November 14, 2022, and continuing, at minimum,

through December 3, 2022. Defendants continually and intentionally refused to clear an internal

NYPD "information card," or "i-card," that was no longer valid, thus ensuring Mr. Osman's

routine arrests by other members of the NYPD. Mr. Osman was not committing any crimes and

1

was conducting himself lawfully while Defendant NYPD Members continued to harass Mr. Osman and abuse their authority to detain him.

2.      Mr. Osman now brings the instant case before this Court.

## PARTIES

3.      At all times mentioned herein, Plaintiff, ADEL OSMAN, was and is a resident of Kings County in the City and State of New York.

4.      At all relevant times mentioned herein, Defendant City of New York ("Defendant City" or "New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

5.      Defendant New York City Mayor ERIC ADAMS was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any NYPD employees and agent, including the New York City Police Commissioner. He is sued individually and in his official capacity.

6.      Defendant NYPD Commissioner KEECHANT SEWELL was at all times relevant to this Complaint the Police Commissioner of the NYPD. As Police Commissioner, Defendant Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. She is sued individually and in her official capacity.

7. Defendant NYPD Chief of Department JEFFREY MADDREY was at all times relevant to this Complaint the Chief of Department of the NYPD who had policymaking authority over the Department. At all relevant times, as Chief of Department, Defendant Maddrey had primary responsibility for NYPD operations—that is, for the police response on the street. Within the paramilitary structure of the NYPD, all NYPD uniformed members of the service were obligated to obey any lawful order given by him. He is sued individually and in his official capacity.

8. Defendant NYPD Chief of Patrol JOHN CHELL was at all times relevant to this Complaint the Chief of Patrol of the NYPD who had policymaking authority over the Department. At all relevant times, as Chief of Department, Defendant Chell had primary responsibility for NYPD patrol operations, particularly operations involving stops of civilians on public streets, including stops conducted while on foot and and/or while operating vehicles. NYPD uniformed members of the service were obligated to obey any lawful order given by Defendant Chell. He is sued individually and in his official capacity.

9. The true names and identities of the NYPD Member Defendants John or Jane Doe #1-20 are currently unknown to Plaintiff. They are referred to herein collectively as "Defendant Does." At all times hereinafter mentioned, these Defendant NYPD Does were employed by the City of New York as members of the NYPD.

10. At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.    Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

12.    The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

13.    All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

14.    At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

15.    Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

16.    Each individual Defendant is sued in her or his individual and official capacities.

## JURISDICTION, VENUE, and GML COMPLIANCE

17.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

18.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where the actions complained of herein occurred.

19.     Plaintiff timely served Notices of Claim on the municipal Defendant within ninety (90) days of the accrual of the claims complained of herein and complied with all conditions precedent to commencing an action under New York State law.

20.     Plaintiff's damages exceed the jurisdiction of lower courts.

21.     Mr. Osman was examined by the Defendant City of New York pursuant to GML §50-H on July 26, 2023.

22.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

23.     This action was initiated within one year and ninety days of the accrual of all Plaintiff's claims pursuant to New York State Law.

## STATEMENT OF FACTS

24.     At the time of the events giving rise to this Complaint, Plaintiff Adel Osman was an 18-year-old student and resident of Kings County, City and State of New York.

25.     On or about November 1, 2022, Mr. Osman was arrested by Defendant Does # 1 – 5 on alleged the basis of an "investigation card," or "i-card," issued by members of the NYPD.

26.     Investigation cards are not warrants. An i-card is an internal police document purporting to confer probable cause for an individual's arrest to all other members of the NYPD should they encounter this person. The NYPD is the only agency with the authority to issue, view, amend, or clear these internal documents.

27.     Upon Mr. Osman's arrest, this i-card should have been "cleared" from the NYPD's system, as the NYPD had acted upon the alleged underlying incident giving rise to this stated cause for Mr. Osman's arrest.

28.     Instead, Defendant NYPD Does # 1 – 20 elected to illegally and intentionally extend Mr. Osman's realized risk of false arrest in perpetuity, and/or to repeatedly act upon the obviously invalid internal directive from their colleagues, resulting in Defendants' repeated violations of Mr. Osman's rights.

### *November 14, 2022*

29.     At approximately 5:00 PM on November 14, 2022, at or near Hegeman Ave. and Thomas S. Boyland St., in Kings County, City and State of New York, Defendant NYPD Does # 6 – 10 stopped the legally registered vehicle lawfully operated by Mr. Osman without cause.

30.     Upon checking Mr. Osman's valid license and registration, Defendant NYPD Does # 6 informed Mr. Osman that there was an "active i-card" for his arrest. Defendant NYPD Doe # 6 informed Mr. Osman that this i-card was dated November 1, 2022. Mr. Osman informed these Defendants that he had cleared this matter and that the i-card must be outdated.

31.     Defendant NYPD Does # 6 – 10 nevertheless falsely arrested Mr. Osman and transported him to the 73rd precinct in Kings County, City and State of New York.

32.     Mr. Osman was in NYPD custody for approximately two hours before he was informed by NYPD member(s) that the i-card was, in fact, invalid.

33.     At least one NYPD member among Defendant NYPD Does # 6 – 10 applied overly tight handcuffs to Mr. Osman's wrists, causing pain, bruising, and swelling. Defendant NYPD Does refused to loosen these handcuffs despite Mr. Osman's repeated requests.

34.     Mr. Osman invoked his rights to remain silent and to an attorney. Nevertheless, over Mr. Osman's objections, he was repeatedly questioned during this period by Defendant NYPD Does, who sought information about guns, gang affiliations, and various criminal activity.

35.     Defendants searched Mr. Osman's person, property, and vehicle without cause, without lawful warrant, and without consent. Mr. Osman's arrest was not lawful. Defendants

caused damage to Mr. Osman's vehicle, including the glove compartment, which they forcibly and unlawfully pried opened.

36.     Mr. Osman was released at approximately 7:30 PM on November 14, 2022 with a Summons endorsed by Defendant NYPD Doe # 1 falsely alleging that Mr. Osman's vehicle was not properly registered.

37.     Defendant NYPD Does # 6 – 10 provided false information to the Kings County District Attorney's Office in an attempt to initiate criminal proceedings against Mr. Osman.

38.     Mr. Osman was forced to return to Court to answer the false allegations levied against him by Defendants on at least one occasion.

39.     The Summons was thereafter dismissed and sealed, terminating the matter and all related charges in Mr. Osman's favor.

### *November 25, 2022*

40.     On or about the night of November 25, 2022, and into November 26, 2022, between approximately 11:45 PM and 12:00 AM, Defendant NYPD Does # 11– 15 stopped Mr. Osman without cause at or near the intersection of 96th St. and Linden Blvd. in Kings County, City and State of New York.

41.     Mr. Osman was lawfully operating his vehicle and complied with all lawful orders.

42.     Mr. Osman again provided his valid license and registration to the Defendants, and Defendant Doe # 6 claimed him that the same i-card, issued November 1, 2022, conferred probable cause to arrest Mr. Osman.

43.     Mr. Osman informed the officers that this was a mistake, and further informed them that their own system would reflect arrests on November 1, 2022, and November 14, 2022, both occurring after the alleged issuance of the internal directive.

44.    These Defendants nevertheless falsely arrested Mr. Osman based on this i-card and transported him to the 67th Precinct in Kings County.

45.    Defendants once again attempted to question Mr. Osman over his unequivocal invocation of his rights.

46.    Defendants searched Mr. Osman's person, property, and vehicle without cause, without lawful warrant, and without consent. Mr. Osman's arrest was not lawful.

47.    Defendant NYPD Does # 11 – 15 detained Mr. Osman without cause for approximately three (3) hours until he was informed by NYPD member(s) that the i-card was, in fact, invalid.

48.     Defendant NYPD Doe # 11 stated, in sum and substance, "I don't know who you pissed off at the 73rd [Precinct], but your i-card won't be cleared."

49.    After approximately three hours in Defendants' custody, Mr. Osman was released and was not charged with a crime.

### December 2, 2022

50.    On or about December 2, 2022, at approximately 11:00 PM, Defendant NYPD Does # 16 – 20 stopped a lawfully operated car in which Mr. Osman was a passenger without cause at or near the intersection of Rockaway Blvd. and Pitkin Ave. in Kings County, City and State of New York.

51.    These Defendants demanded the names and identifications of all of passengers in the car.

52.    Mr. Osman again provided his valid ID.

53.    Once again, these Defendants informed Mr. Osman that a November 1, 2022 i-card provided cause for his arrest.

54.     Defendants searched Mr. Osman's person and property without cause, without lawful warrant, and without consent. Mr. Osman's arrest was not lawful.

55.     Mr. Osman was detained on the side of the road for approximately thirty (30) minutes to one hour, until approximately 12:00 AM on December 3, 2022.

56.     Mr. Osman was released without charges.

### *Damages*

57.     Defendants' conduct subjected Mr. Osman to lost income, deprived him of his property, and forced him to expend costs, including to repair his vehicle.

58.     Defendants forced Mr. Osman to miss classes and/or to fall behind in his studies.

59.     Defendants forced Mr. Osman to experience anxiety related to operating his vehicle and/or leaving his home for fear of being arrested without any justification or cause.

60.     Defendants have greatly interfered with Mr. Osman's enjoyment and engagement in daily life.

61.     Defendants' conduct has caused Mr. Osman serious pain, suffering, and injuries, including injuries to his wrists.

62.     Defendant's conduct has caused Mr. Osman mental anguish in addition to pecuniary damages.

63.     The full extent of Mr. Osman's injuries and damages is not yet known.

### **FIRST CLAIM FOR RELIEF**

**Unlawful Search and Seizure**
***Against All Defendants Pursuant to <u>42 U.S.C. § 1983</u> for Defendants' Violations of Plaintiff's Rights Under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution***

64.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

65.     Defendants' seizure of the Plaintiff herein was done without any judicial warrant authorizing them to search or seize any Plaintiff or his property, was unreasonable, and was done without privilege or lawful justification.

66.     Plaintiff did not consent to any search and was conscious of his confinement by Defendants.

67.     Defendants did not have individualized probable cause to seize, detain, or arrest Plaintiff.

68.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; interfered with his right to security and privacy; and/or otherwise damaged and injured Plaintiff.

69.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### SECOND CLAIM FOR RELIEF

**Excessive Force**
*Against Defendants # 6 – 10 Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

70.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

71.     Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

72.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

73.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### Violations of Plaintiff's Due Process Rights
*Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution*

74.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

75.     Defendants City, Defendant Adams, and Defendant Sewell designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing Plaintiff and subjected Plaintiff to the violations of his Due Process rights described elsewhere herein.

76.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty and property without due process of law.

77.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

78.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability
*Against Defendants City, Adams, Sewell, Maddrey, and Chell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations*

*of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

79.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

80.     The Policymaker Defendants above were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

81.     The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to: policies of unlawful searches and seizures; the abuse of the NYPD's "information card" system; arrests on DAT-mandatory charges; restrictions on freedom of association; and unlawful vehicular stops, searches, and seizures.

82.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

a.   Formal policies, rules, and procedures of Defendant City;

b.   Actions and decisions by Defendant City's policymaking agents including, but not limited to, the Policymaker Defendants named above;

c.   Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, Defendant Adams and Defendant Sewell, and other policymaking officials;

d.   Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

### FIFTH CLAIM FOR RELIEF

**False Arrest**
***Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Fourth
and Fourteenth Amendments to the United States Constitution***

83.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

84.     Defendants unlawfully restricted Plaintiff's movement and deprived Plaintiff of his liberty without a lawful warrant and without probable cause.

85.     The facts available to the NYPD Defendants at the time of Plaintiff's arrest failed to support the charge against him.

86.     Nevertheless, Defendants unlawfully arrested and detained Plaintiff on multiple occasions, and failed to eliminate the invalid i-card against Mr. Osman following these arrests, ensuring future violations of Mr. Osman's rights.

87.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

88.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

89.     All charges against Mr. Osman were dismissed.

### SIXTH CLAIM FOR RELIEF

**Excessive Detention**
***Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Fourth
and Fourteenth Amendments to the United States Constitution***

90.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

91.     Plaintiff was held in NYPD custody for several hours on at least two occasions by NYPD Defendants without justification or cause, and again for approximately one hour without cause on a third occasion.

92.     These detentions violated Plaintiff's right to be free from continued detention and was predicated upon false allegations by NYPD Defendants.

93.     Defendants' conduct in continuing to detain Plaintiff was motivated by Defendants' ill will and/or in an attempt to gather additional evidence to justify Plaintiff's arrest and/or delay for delay's sake.

94.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

95.     Accordingly, Plaintiff is entitled to the damages requested in this Complaint.

## SEVENTH CLAIM FOR RELIEF

**Malicious Prosecution**
*Against Defendant NYPD Does # 1-10 Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Second, Fourth and Fourteenth Amendments to the United States Constitution*

96.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

97.     Defendants instituted or caused the claim against Plaintiff to be instituted without any probable cause. Defendants provided false information to further the criminal prosecution of Plaintiff.

98.     Defendants' motive in instituting the suit was malicious, and the prosecution of Plaintiff was terminated in his favor when the Kings County District Attorney dismissed the charges against him, thus dismissing the charge against Plaintiff.

99.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his liberty and his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

100.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### EIGHTH CLAIM FOR RELIEF

**First Amendment Retaliation and Impermissible First Amendment Restriction**
*Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution*

101.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

102.    Defendants, during their illegal detentions of Mr. Osman, repeatedly sought information related to his social network and/or perceived associates.

103.    Defendants imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in unlawfully seizing Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, in subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

104.    In addition to being retaliatory, the restrictions Plaintiff complains of herein, which Defendants imposed upon Plaintiff's First Amendment rights to participate in, observe, and/or stand nearby speech, conduct, association, and/or other expressive activities protected by the First Amendment on the streets, were themselves regulations on Plaintiff's protected conduct that:

   a.      Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests,

and/or were not the least restrictive means readily available to serve those interests; or, alternately,

b.     Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened; and/or

c.     Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's abilities to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

d.     Amounted to the imposition of strict liability on Plaintiff for engaging in protected speech and/or expression.

105.   Defendants further engaged in retaliation against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, including his association with Plaintiff's association with individuals in his vehicle.

106.   Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

107.   Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

108.   Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

109.   Defendants' conduct did deter Plaintiff from free association and free speech, including by deterring him from reporting his illegal eviction to the same Department that had caused this harm.

110.   Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them

subjected Plaintiff to violations of his First Amendment rights, particularly his right to free association.

111.   Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

112.   Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiff, including the invocation of his right to silence and to counsel, and his encouragement of others to do the same.

113.   Upon information and belief, Defendants did not subject other others similarly situated to Plaintiff in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

114.   Plaintiff suffered actual chill, including in that Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on his protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

115.   Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiff subjected Plaintiff to the violations of their First Amendment rights described elsewhere herein.

116.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

117.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

118.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## NINTH CLAIM FOR RELIEF

**Failure to Train and/or Supervise**
***Against Defendants City, Adams, Sewell, Maddrey, and Chell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)***

119.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120.    Defendant City, and its agents Defendants Adams and Sewell, failed to train and supervise the Defendant NYPD Members.

121.    All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Osman' injuries.

122.    Defendants knew or should have known that Defendant NYPD Members were likely to violate the constitutional rights of individuals in their custody.

123.    Defendants know that NYPD Members are certain to regularly encounter situations such as those described herein—including the police approach and/or arrest and/or vehicular search of Black men—through the course of their employment.

124.    Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

125.    Defendants also knew that individual NYPD Defendants have a documented history of adverse credibility findings and/or abusive conduct against individuals they encountered during their employment.

126.    Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries.  Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

127.    By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

128.    The harms suffered by Plaintiff are the direct result of Defendants' failures.

### TENTH CLAIM FOR RELIEF

**Negligent Screening, Hiring, and Retention**
***Against Defendants City, Adams, Sewell, Maddrey, and Chell Pursuant to <u>42 U.S.C. § 1983</u> and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978)***

129.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

130.    All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Osman' injuries.

131.    Defendant City and its agents Defendants Adams and Sewell knew that the individual Defendants had a propensity for the conduct giving rise to Mr. Osman' injuries.

132.    Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

133.    Such documented history of Defendants' willingness to lie and/or misrepresent facts while under oath and/or otherwise cause harm to individuals subjected to interactions with police renders Defendants' conduct both predictable to and preventable by policymaker Defendants.

134.    Rather than removing or disciplining NYPD members who have provided non-credible testimony to courts, policymaker Defendants have continued to employ and empower such NYPD members to continue inflicting predictable harm on individuals they interact with, including Plaintiff. Such conduct is so foreseeable as to rise to the level of deliberate indifference.

## ELEVENTH CLAIM FOR RELIEF

### Breach of Duty to Protect
### *Against All Defendants Pursuant to 42 U.S.C. § 1983*

135.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

136.    The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

137.    Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

138.    Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## TWELFTH CLAIM FOR RELIEF

### Equal Protection and Selective Enforcement

20

***Against All Defendants Pursuant to <u>42 U.S.C. § 1983</u> for Defendants' Violations of
Plaintiff's Rights Protected Under the Fourteenth Amendment to the United States
Constitution***

139.    Plaintiff incorporates by reference the allegations set forth in all preceding and
following paragraphs as if fully set forth herein.

140.    As discussed elsewhere herein, Defendants City, Adams, and Sewell, designed
and/or implemented policies and practices pursuant to which those Defendants who ordered,
effected, and otherwise participated in detaining Plaintiff thus subjected Plaintiff to the above-
described violations of Plaintiff's Equal Protection rights.

141.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of
their federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,
psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and
expenses; and/or otherwise damaged and injured Plaintiff.

142.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or
reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRTEENTH CLAIM FOR RELIEF

**Conspiracy**
***Against All Defendants Pursuant to <u>42 U.S.C. § 1985(3)</u>***

143.    Plaintiff incorporates by reference the allegations set forth in all preceding
paragraphs as if fully set forth herein.

144.    Through the conduct described and complained of herein, Defendants conspired to
deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under
the laws.

145.    Defendants acted in furtherance of this conspiracy against Plaintiff, and as a result of this conduct, Plaintiff was injured in his person and property and deprived of his constitutional and civil rights.

## FOURTEENTH CLAIM FOR RELIEF

**Failure to Prevent Civil Rights Violations**
***Against all Defendants Pursuant to* 42 U.S.C. § 1986**

146.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

147.    Defendants, including individual NYPD Defendants, had knowledge that the wrongs conspired to be done against Plaintiff in violation of 42 U.S.C. § 1985 were to be committed and had the power to prevent and/or aid in preventing the commission of this conduct.

148.    Defendants neglected and/or refused to prevent the commission of this conduct and Plaintiff sustained harm and/or the exacerbation of harm and the deprivation of his rights as a result of this failure.

149.    Defendants are liable for all damages caused by the conspiratorial conduct they failed to prevent despite possessing the power to do so.

## FIFTEENTH CLAIM FOR RELIEF

**Violations of New York State and City Law**
***Pursuant to the New York State Constitution and New York State Common Law***

150.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

151.    As a result of the conduct described herein, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## I. *Respondeat Superior*

152.    The conduct of the police officials alleged herein occurred while they were on duty

and/or in and during the course and scope of their duties and functions as police officials, and/or

while they were acting as agents and employees of Defendant City, clothed with and/or invoking

state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to

the state common law doctrine of *respondeat superior*.

## II.    Violations of the New York State Constitution

153.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to

Article I §§ 5, 11, and 12 of the New York State Constitution.

154.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 5,

11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of

Plaintiff's rights under those sections.

## III. Wrongful Search and Seizure and Excessive Force

## Pursuant to the New York State Constitution and the <u>New York City Administrative Code Chapter 8, Title 8, § 8-801 et seq.</u>

155.    The NYPD Defendants are "covered individuals" as defined in <u>NYC Admin. Code Ch. 8, Tit. 8, § 8-801</u>.

156.    As described above, the Defendants violated Plaintiff's right to be free from

"unreasonable searches and seizures, and to be secure against the use of excessive force regardless

of whether such force is used in connection with a search or seizure."

157.    The NYPD Defendants and their employer, including the Defendant City, are liable

to Plaintiff for this conduct.

158.    Defendants may not invoke the defense of qualified immunity.

159.     Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

### IV.     False Arrest

160.     By the actions described above, the police officials described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

161.     Plaintiff was conscious of the confinement and it was without his consent.

162.     Defendants levied false allegations against Mr. Osman to wrongfully seize, detain, and arrest him.

163.     Not only were Defendants' allegations false, but the charges themselves did not permit Plaintiff's custodial arrest.

164.     Even if Defendants were to claim they possessed cause to believe that Mr. Osman had committed an alleged traffic infraction, NYPD Defendants did not have the lawful authority to arrest Plaintiff under the New York State Criminal Procedure Law (C.P.L.) § 150.20(1)(a).

165.     The C.P.L. mandates that summonses are issued for offenses other than violent felonies, sexual offense allegations, charges that may result in the issuance of an order of protection, and certain other charges specified under C.P.L. §§ 70.02, 150.20, and other provisions.

166.     Furthermore, Mr. Osman did not personally qualify for any of the circumstantial exceptions to the C.P.L. forbidding custodial arrest for minor offenses. Mr. Osman not have any active warrants, he provided his true legal identity and even presented his valid identification upon Defendants' request, he was not on probation or parole, and did not present a danger to himself or others, nor was he alleged to.

167.    Defendants did not have the lawful authority to arrest Plaintiff and/or search Plaintiff and his personal belongings having accused him only of a traffic infraction under the Vehicle and Traffic Law, regardless of its validity.

168.    All charges against Mr. Osman were dismissed.

### V.      False Imprisonment and Unreasonable Detention

169.    By the actions described above, the Defendants described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff was conscious of the confinement, and it was without his consent.

### VI.      Assault and Battery

170.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

171.    The force utilized by Defendants was unreasonable and intentional, and this force caused significant injury to Plaintiff.

172.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

173.    Defendants did thereby inflict assault and battery upon the Plaintiff.

### VII.      Excessive Force

174.    Defendants' use of excessive force against Plaintiff was unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

175.    This conduct caused Plaintiff physical injury and emotional anguish, and Defendants are liable to Plaintiff for this conduct and its resulting injuries.

## VIII. Negligence

176.    Defendants owed a special duty to Plaintiff and breached this duty through their conduct described herein. Defendants' negligence in fulfilling their duty to Plaintiff resulted in Plaintiff's injuries and they are liable for this conduct and its resulting injuries.

## IX. Conversion

177.    Defendants permanently deprived Plaintiff of his property, including United States currency.

178.    Defendants refused to provide food to Mr. Morales while he wrongfully remained in Defendants' custody, and when Defendants insisted that Mr. Morales would only be provided food if he provided currency to Defendants, including Defendant Stosch.

179.    Defendants had no right to this property, had an obligation to provide Plaintiff with food, and wrongly permanently deprived Mr. Morales of his property.

## X. Negligent Infliction of Emotional Distress

180.    Defendants owed Plaintiff a duty of care and breached this duty of care through the conduct described herein, directly causing the emotional harms, including post-traumatic stress, insomnia, depression, and ongoing anxiety and fear.

## XI. Negligent Hiring, Training, and Supervision

181.    Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

182.    At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Plaintiff's injuries.

183.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i.  Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.  Actual damages in an amount to be determined at trial against the City of New York;

iii.  Policy change;

iv.  Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York State Civil Rights Law, the New York City Administrative Code, and New York State common law; and

v.  Such other relief as the Court deems just and proper.

Dated:      Brooklyn, New York
            February 12, 2024

KAISHIAN & MORTAZAVI LLC

By: _____
MARYANNE K. KAISHIAN
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: mk@kaishianlaw.com

## PLAINTIFF VERIFICATION

STATE OF NEW YORK        )
                                            ss.:
COUNTY OF KINGS          )

       **ADEL OSMAN**, the Plaintiff in the above action, affirms the following under penalties

of perjury:

1. I am the Plaintiff in the above matter, *Adel Osman v. City of New York et al*.

2. I am over 18 years old and I am a resident of Kings County, City and State of New York.

3. I have read the attached Complaint, and the same is true and to my own knowledge

    except as to matters therein alleged to be on information and belief, and as to those

    matters, I believe them to be true.

Dated: Brooklyn, New York
       February 12, 2024

                                  ADEL OSMAN

---

STATE OF NEW YORK        )
                         SS.
COUNTY OF KINGS          )

On the 12 day of February in the year 2024, before me, the undersigned notary public, personally, by electronic means approved by New York State in accordance with my licensure as an electronic notary, appeared  ADEL OSMAN  , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notarized online using audio-video communication

Maryanne K Kaishian
Online Notary Public
State of New York
Kings County
Commission #: 02KA0015799
Commission Expires: 11/07/2027

Notary Public